**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

A2K, INC.,

    *Plaintiff,*

v.                                                                              No. 3:26-cv-00206

FLUOR CORPORATION d/b/a FLUOR
MISSION SOLUTIONS, AND
B&H CLAIMS SERVICE, INC.,

    *Defendants.*


**B&H Claims Service, Inc.'s 12(b)(6) Motion to Dismiss with Brief in Support**

To the Honorable Judge of Said Court:

Subject to and in the alternative to its separately filed 12(b)(2) Motion, B&H Claims Service, Inc. hereby moves that all causes of action asserted against it by Plaintiff A2K, Inc. be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As set forth herein, A2K has sued B&H for claims under the Sherman Act, unjust enrichment, tortious interference with existing contract, tortious interference with prospective business relations, civil conspiracy, defamation, business disparagement, and unfair competition by common law misappropriation, but A2K has failed to assert adequate factual allegations to support any of these causes of action, thereby failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Pursuant to Local Rule 7.1(d) and 7.2, in support of this Motion, B&H submits the following brief to this Honorable Court as follows:

# Table of Contents

B&H Claims Service, Inc.'s 12(b)(6) Motion to Dismiss with Brief in Support .................. 1

Table of Contents ................................................................................................................. 2

Index of Authorities ............................................................................................................. 3

Introduction .......................................................................................................................... 6

Factual Allegations .............................................................................................................. 6

Legal Standard ..................................................................................................................... 8

Argument .............................................................................................................................. 9

    A.  A2K does not state a claim for "information exchange conspiracy" under Section 1 of the Sherman Act (Count I) ................................................................. 9

        1.    A2K fails to plead specific facts to demonstrate a conspiracy ..................... 9

        2.    A2K does not allege anticompetitive effects in a cognizable relevant market ......................................................................................................... 12

        3.    A2K does not allege an antitrust injury ...................................................... 13

    B.  A2K fails to state a claim under Section 2 of the Sherman Act (Count II) ............ 14

    C.  A2K fails to state a claim for unjust enrichment (Count IV) ................................. 16

    D.  A2K fails to state a claim for tortious interference with existing contract or prospective business relations (Counts VI & VII) .................................................. 17

    E.  A2K fails to state a claim for civil conspiracy (Count X) ....................................... 19

    F.  A2K fails to state a claim for defamation or business disparagement (Counts XI and XII) ......................................................................................................... 21

    G.  A2K fails to state a claim for unfair competition by common law misappropriation (Count XIII) .................................................................................. 22

Conclusion and Prayer ....................................................................................................... 24

Certificate of Service .......................................................................................................... 25

## Index of Authorities

### Cases

*Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics Inc.*,
   No. 5:17-cv-1295-RCL, 2022 U.S. Dist. LEXIS 60676 (W.D. Tex. Mar. 21, 2022). ........... 15

*Apani Sw., Inc. v. Coca-Cola Enters.*,
   300 F.3d 62 (5th Cir. 2002) ........................................................................................ 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................... 9, 10, 11

*Best Buy Co. v. Barrera*,
   248 S.W.3d 160 (Tex. 2007) ....................................................................................... 16

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962) .................................................................................................... 13

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977) ................................................................................................. 9, 13

*Cargill, Inc. v. Monfort, Inc.*,
   479 U.S. 104 (1986) .................................................................................................... 13

*Doctor's Hosp. v. Southeast Medical Alliance*,
   123 F.3d 301 (5th Cir. 1997) ...................................................................................... 15

*Drs. Hosp. of Laredo v. Cigarroa*,
   782 F.Supp.3d 406 (W.D. Tex. 2025) ........................................................................ 15

*ED&F Man Biofuels, Ltd. v. MV Fase*,
   728 F.Supp.2d 862 (S.D. Tex. 2010) .......................................................................... 16

*Edwards v. Mid-Continent Office Distribs., L.P.*,
   252 S.W.3d 833 (Tex. App.—Dallas 2008, pet. denied) ............................................ 16

*EuroTec Vertical Flight Sols.*,
   No. 3:15-CV-3454-S, 2019 U.S. Dist. LEXIS 12908 (N.D. Tex. Aug. 1, 2019) .................. 14

*Faucette v. Chantos*,
   322 S.W.3d 901(Tex. App.—Houston [14th Dist.] 2010) ................................................. 18

*Hancock v. Chicago Title Ins. Co.,*
635 F. Supp. 2d 539 (N.D. Tex. 2009) ................................................................. 16

*Hurlbut v. Gulf Atl. Life Ins.,*
749 S.W.2d 762 (Tex.1987) ................................................................................ 21

*In re Ins. Brokerage Antitrust Litig.,*
618 F.3d 300 (3d Cir. 2010) ................................................................................ 10

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.,*
997 F. Supp. 2d 526 (N.D. Tex. 2014) ................................................................. 10

*Innovative Block v. Valley Builders Sup.,*
603 S.W.3d 40 (Tex. 2020) ............................................................................ 21, 22

*Inwood Nat'l Bank v. Fagin,*
706 S.W.3d 342 (Tex. 2025) .......................................................................... 17, 18

*Juliette Fowler Homes, Inc. v. Welch Assoc., Inc..,*
793 S.W.2d 660 (Tex. 1990) ............................................................................... 18

*Lilith Fund for Reprod. Equity v. Dickson,*
662 S.W.3d 355 (Tex. 2023) ............................................................................... 21

*Love Terminal Partners, L.P. v. City of Dallas, Tex.,*
527 F. Supp. 2d 538 (N.D. Tex. 2007) ................................................................. 10

*Mandawala v. Northeast Baptist Hosp.,*
16 F.4th 1144 (5th Cir. 2021) ............................................................................. 21

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n,*
751 F.3d 368 (5th Cir. 2014). ............................................................................. 10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ........................................................................................... 11

*Nynex Corp. v. Discon, Inc.,*
525 U.S. 128 (1998) ........................................................................................... 15

*Ohio v. Am. Express Co.,*
585 U.S. 529 (2018) ......................................................................................... 9, 13

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
124 F.3d 430 (3d Cir. 1997) ............................................................................... 12

*Roxo Energy Co., LLC v. Baxsto, LLC,*
  713 S.W.3d 404 (Tex. 2025) ...................................................................................... 20

*RX Sols., Inc. v. Caremark, L.L.C.,*
  164 F.4th 436 (5th Cir. 2026) ................................................................................... 12

*Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Centers, Inc.,*
  200 F.3d 307 (5th Cir. 2000) .............................................................................. 11, 15

*Texas v. BlackRock, Inc.,*
  No. 6:24-CV-437-JDK, 2025 U.S Dist. LEXIS 147891 (E.D. Tex. Aug. 1, 2025) ................. 9

*Thomason v. Collins & Aikman Floorcoverings, Inc.,*
  No. 04-02-00870-CV, 2004 Tex. App. LEXIS 2823 (Tex. App.—San Antonio Mar.
  31, 2004, pet. denied) (mem. op.) ........................................................................... 24

*Tilton v. Marshall,*
  925 S.W.2d 672 (Tex. 1996) ...................................................................................... 19

*United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.,*
  819 F. App'x 204 (5th Cir. 2020) .............................................................................. 19

*United Farmers Agents Ass'n v. Farmers Ins. Exchange,*
  89 F.3d 233 (5th Cir. 1996) ....................................................................................... 12

*United States v. Booz Allen Hamilton Inc.,*
  No. CCB-22-1603, 2022 U.S. Dist. LEXIS 190006 (D. Md. Oct. 11, 2022) ........................ 13

*Vertex Servs., LLC v. Oceanwide Houston, Inc.,*
  583 S.W.3d 841 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ................................. 23, 24

*Waggoner v. Denbury Onshore, L.L.C.,*
  612 Fed. Appx. 73 (5th Cir. 2015) .............................................................................. 13

*Wal-Mart Stores, Inc. v. Sturges,*
  52 S.W.3d 711 (Tex. 2001) ........................................................................................ 19

**Statutes**

15 U.S.C. § 2 ................................................................................................................ 14

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 8

## Introduction

1.  Defendant B&H Claims Service, Inc. is a subcontractor of a Fluor affiliate[1] retained to supply trained professionals for a disaster relief project. Plaintiff A2K alleges B&H conspired with or otherwise convinced the Fluor entity, as the prime contractor on a FEMA contract, not to retain A2K's services as another subcontractor on the same job. A2K also alleges B&H improperly contacted individuals who were allegedly aligned with A2K and later removed from A2K's roster, regardless of whether they were even realigned with B&H. A2K has brought several claims against B&H based on the theory that B&H obtained business that, even as alleged by A2K, A2K had no legal entitlement to receive.

2.  Because A2K has not alleged facts from which the Court could plausibly infer liability against B&H under any of A2K's theories or causes of action, the Court should dismiss all claims against B&H.

## Factual Allegations[2]

3.  Defendant B&H Claims Service, Inc., as a subcontractor, locates and provides technical assistance contractor personnel, known as TAC workers, to prime contractors that contract with FEMA to provide specialized professional and technical services in disaster relief zones. Dkt. 1, Plaintiff's Original Complaint, at ¶ 2, 4, 5. These individual

---

[1] Concurrently with the filing of this Motion, B&H has filed a separate Motion to Dismiss based on Rule 12(b)(2), challenging this Court's exercise of personal jurisdiction. In such Motion, B&H denies that it contracted with Defendant Fluor Corporation.

[2] B&H accepts A2K's factual allegations as true solely for purposes of this Motion to Dismiss, as required for review of a Rule 12(b)(6) motion.

B&H's 12(b)(6) Motion to Dismiss with Brief in Support                                     6
1384.72592

TAC workers provide services like "architectural, engineering, cost estimating, policy analysis, and insurance." *Id.* at ¶ 2. Plaintiff A2K, another subcontractor, alleges it contracted with prime contractor Fluor to provide TAC workers.

4. According to A2K, it entered into a subcontract with Fluor under which Fluor had the right, but not the obligation, to place orders for personnel with A2K. *See* Dkt. 1 at ¶¶ 4, 16, 20, 23, 26. Under its subcontract, A2K could propose workers for Fluor to utilize on FEMA projects, but A2K admits it "had no guarantee of any candidate selections" by Fluor under its subcontract. *Id.* at ¶ 26. A2K also admits that the TAC workers themselves could choose which Fluor subcontractor to work for out of the multiple subcontractors Fluor contracted with. *See id.* at ¶¶ 23, 26, Ex. 6.

5. In 2024, A2K provided TAC workers to Fluor for a fire disaster that occurred in New Mexico (the "HPCC Fires"). Dkt. 1 at ¶ 31. Then, around July 2025, A2K alleges it began receiving contacts from TAC workers who had been working on the HPCC Fires project, but who needed to become employed with a different subcontractor due to FEMA's choice to end its engagement with another prime contractor. *Id.* at ¶¶ 33-35. In addition, around this time, FEMA identified sixteen TAC workers it wished to continue using at the HPCC Fires from a selection of TAC workers submitted by A2K to Fluor, most of whom had been working at the HPCC Fires under the now-disengaged prime contractor through its subcontractors, allegedly including B&H. *Id.* at ¶¶ 35, 38-39.

6. A2K alleges it expended significant time and resources to onboard these TACs at Fluor's request, including reviewing resumes, interviewing the TACs, obtaining information for security clearance of the TAC, assisting the TACs through the security

clearance process, generating "Fluor formatted" resumes, and assisting TACs in preparing to deploy to the project and receiving FEMA-required training and instructions. Dkt. 1 at ¶ 44. A2K alleges that Fluor, on its own or in conspiracy with B&H, "stole" the TACs onboarded by A2K by deploying them in alignment with Fluor's other subcontractors, including B&H, instead of aligned with A2K. *Id.* at ¶¶ 55-57, 70, 83-84. Although A2K alleges the TACs were aligned with subcontractors other than B&H, B&H is the only subcontractor defendant in this lawsuit.

7.   A2K alleges that on September 22, 2025, B&H's "President" Gary Perna sent an email to TACs stating that A2K was no longer a part of the HPCC Fires project "(per Fluor)." Dkt. 1 at ¶ 67, Ex. 5. A2K alleges this was a false and damaging statement. *Id.* at ¶ 67. A2K acknowledges that a few days after Perna sent this email, Fluor notified A2K that it would no longer utilize TACs from A2K. *Id.* at ¶ 75. That same day, Fluor sent an email to its subcontractors stating that TACs could contact any of its subcontractors other than A2K to work on the HPCC Fires project. *Id.* at ¶ 72, Ex. 6. A2K alleges that B&H benefited from an alleged conspiracy with Fluor and its allegedly false statements by acquiring the revenue and profit from the TACs being switched from A2K's roster to its own. *Id.* at ¶ 81. A2K does not allege that all the TACs that were "stolen" from A2K were re-aligned with B&H; nor does A2K allege how many of the "stolen" TACs were deployed as aligned with B&H.

## Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007). This requires more than "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Antitrust claims require a particular amount of specificity of pleading due to the significant burdens of antitrust discovery. *Twombly*, 550 U.S. at 558–59.

**Argument**

**A.    A2K does not state a claim for "information exchange conspiracy" under Section 1 of the Sherman Act (Count I).**

**1.  A2K fails to plead specific facts to demonstrate a conspiracy.**

8.  For a claim under Section 1 of the Sherman, a plaintiff "must allege that the defendants '(1) engaged in a conspiracy (2) that restrained trade (3) in a particular market.'" *Texas v. BlackRock, Inc.*, No. 6:24-CV-437-JDK, 2025 U.S Dist. LEXIS 147891, *41 (E.D. Tex. Aug. 1, 2025). To prove such a claim, a plaintiff must prove that the complained of conduct has anticompetitive effects in an antitrust market through direct evidence "such as reduced output, increased prices, or decreased quality in the relevant market" or indirect evidence such as "proof of market power plus some evidence that the challenged restraint harms competition." *Ohio v. Am. Express Co.*, 585 U.S. 529, 542 (2018). A plaintiff must also show an antitrust injury, that is, an injury "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Speculation about anticompetitive effects and allegations that complained of conduct

harmed a competitor are not sufficient to state a claim upon which relief can be granted under Section 1. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 76 (5th Cir. 2014).

9.   In addition, to overcome a 12(b)(6) motion to dismiss a Section 1 claim, a plaintiff must plead a conspiracy beyond labels and conclusions, and instead plead facts such as a specific time, place, or person involved in the alleged conspiracy. *Love Terminal Partners, L.P. v. City of Dallas, Tex.*, 527 F. Supp. 2d 538, 553-54 (N.D. Tex. 2007) (citing *Twombly*, 550 U.S. at 565 n.10).

10. Allegations merely suggesting action that could have just as likely been the result of independent behavior or that is equally consistent with innocent business-related discussions are insufficient to plausibly plead a conspiracy under Section 1. *Marucci Sports*, 751 F.3d at 375 (affirming dismissal of complaint where plaintiff asserted conclusory allegations that supported "one of many inferential possibilities."); *see also*, *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 542 (N.D. Tex. 2014) (stating that the actions plaintiff alleged demonstrated conspiracy were "at least equally consistent with" "unconcerted action" of the alleged conspirators) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 329-30 (3d Cir. 2010) (discussing how information-sharing between alleged conspirators was just as likely independent behavior, and therefore, did not plausibly allege a conspiracy)).

11. Further, when "the antitrust claims 'simply make[] no economic sense, [plaintiffs] must come forward with more persuasive evidence to support their claim than otherwise would be necessary.'" *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Centers, Inc.*, 200

F.3d 307, 315 (5th Cir. 2000) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 987 (1986)).

12. A2K conclusorily alleges that Fluor, B&H, and unidentified "co-conspirators" agreed to "regularly exchange detailed timely, competitively sensitive and non-public information about their operations" in violation of Section 1 of the Sherman Act. Dkt. 1 at ¶ 86. But A2K alleges no facts demonstrating who exchanged what information or when, where the exchange occurred, or how the information allegedly exchanged was "competitively sensitive." A2K's allegation is the exact kind of allegation the United States Supreme Court found insufficient to plead a Section 1 claim in *Twombly*. *See*, 550 U.S. at 551.

13. In addition, as pleaded, the conduct A2K complains about generally in its Complaint and more specifically for its Section 1 claim could just as likely be the result of unconcerted action of Fluor and its subcontractors or be innocent business discussions between them. A2K essentially complains that Fluor decided not to award A2K business *that it was not legally entitled to*, and instead chose to award business to other subcontractors. *See* Dkt. 1 at ¶ 23, 26. A2K makes no factual allegation to explain why Fluor could not independently choose to stop utilizing A2K's services as Fluor's subcontractor, or to explain why other subcontractors were not permitted to align with TACs who wanted to work for a Fluor subcontractor. *See id.* at ¶ 26 (admitting that A2K was not guaranteed to obtain Fluor's business).

14. The only factual allegations A2K relies on to demonstrate any alleged conspiracy with B&H or other subcontractors are communications where B&H merely stated that

A2K "(per Fluor)" would no longer be working on the HPCC Fires project or that a TAC was assigned to the project through B&H and not A2K, which was also a "per Fluor" statement. *See id.* at ¶ 45, Ex. 2 (text stating Fluor put the TAC on B&H's team); *id.* at ¶ 67, Ex. 5 (email stating A2K was no longer on the project). But these statements are just as likely the result of Fluor unilaterally choosing to no longer work with A2K and informing B&H of such. And any alleged exchange between Fluor and its subcontractors of "detailed timely" or "non-public information about their operations," whatever that may be referring to, could just as likely be normal business-related communications between parties to a business transaction.

### 2. A2K does not allege anticompetitive effects in a cognizable relevant market.

15. Failing to properly define the relevant market for a Sherman Act claim is a basis for dismissal of such claim. *RX Sols., Inc. v. Caremark, L.L.C.*, 164 F.4th 436, 442 (5th Cir. 2026). A relevant market comprises a product market and a geographic market. *Rx Sols.*, 164 F.4th at 442. A failure to substantiate either of these will result in dismissal. *Id.*

16. Instead of properly defining a relevant market supported by facts, A2K attempts to define the market based on the single contract between Fluor and FEMA. Dkt. 1 at ¶¶ 18, 87, 95. But federal courts have found that a market cannot be defined by a single contract. *See United Farmers Agents Ass'n v. Farmers Ins. Exchange*, 89 F.3d 233 (5th Cir. 1996) ("Economic power derived from contractual agreements such as franchises…'has nothing to do with market power, ultimate consumers' welfare, or antitrust.'"); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 441 (3d Cir. 1997) ("[N]o court has

defined a relevant product market with reference to the particular contractual restraints of the plaintiff."); *Apani Sw., Inc. v. Coca-Cola Enters.*, 300 F.3d 620, 629 (5th Cir. 2002) ("[A]s a matter of common sense a single purchaser of a product cannot generally be considered a relevant market."); *United States v. Booz Allen Hamilton Inc.*, No. CCB-22-1603, 2022 U.S. Dist. LEXIS 190006, *26 (D. Md. Oct. 11, 2022) (the plaintiff's attempt to define the market as a single government contract was an attempt to "'gerrymander its way to victory without due regard for market realities.'"). Any decision by Fluor (a single prime contractor out of multiple prime contractors to FEMA, as admitted by A2K (Dkt. 1 at ¶ 2)) to no longer utilize A2K's services did not categorically mean that A2K's services were therefore unsellable to other prime contractors, or even to other customers outside of the government contracting space or in other parts of the country. Thus, it is clear that the market at issue cannot be defined by the single contract between Fluor and FEMA.

### 3. A2K does not allege an antitrust injury.

17. The purpose of antitrust law is to protect "*competition*, not *competitors*." *Cargill, Inc. v. Monfort, Inc.*, 479 U.S. 104, 110 (1986) (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)) (emphasis in original). Without alleging an injury derived from competitive harm, a plaintiff has not alleged an injury of the type antitrust laws were intended to prevent. *Waggoner v. Denbury Onshore, L.L.C.*, 612 Fed. Appx. 734, 737 (5th Cir. 2015) (citing *Brunswick*, 429 U.S. at 489).

18. A2K makes no allegations that the conduct it complains of in this lawsuit resulted in any change, whether up or down, in price, output, or quality of any product. *See Ohio*, 585 U.S. at 542 (anticompetitive effects can be demonstrated through direct evidence

"such as reduced output, increased prices, or decreased quality in the relevant market"). A2K does not claim that the alleged conduct of Fluor or B&H resulted in a reduced output of emergency services, that the costs of providing such services increased, or that the quality of the services decreased. Instead, A2K merely alleges that the services were fulfilled through the business of subcontractors other than A2K, and the only injury alleged is A2K's own lost revenue from not being selected to participate in providing services which it was never even entitled to be selected for. Antitrust law is intended to protect competition, not to protect a competitor's ability to obtain business. A2K's failure to appropriately allege facts demonstrating an antitrust injury is grounds for dismissal. *See EuroTec Vertical Flight Sols.*, No. 3:15-CV-3454-S, 2019 U.S. Dist. LEXIS 129084, *53-54 (N.D. Tex. Aug. 1, 2019) (dismissing Section 1 claims where the plaintiff did not plead facts showing any injury to competition and instead only provided speculative and conclusory allegations of anticompetitive effects).

**B.     A2K fails to state a claim under Section 2 of the Sherman Act (Count II).**

19. Section 2 of the Sherman Act prohibits monopolization, attempts to monopolize, and conspiracies to monopolize. 15 U.S.C. § 2. A2K alleges Fluor holds a monopoly, and that there was a conspiracy to monopolize between Fluor and B&H. Dkt. 1 at ¶ 89-91. A2K only alleges a claim for conspiracy to monopolize against B&H.

20.  For a claim of conspiracy to monopolize, a plaintiff must allege "(1) the existence of specific intent to monopolize; (2) the existence of a combination or conspiracy to achieve that end; (3) overt acts in furtherance of the combination or conspiracy; and (4) an effect upon a substantial amount of interstate commerce." *Stewart Glass*, 200 F.3d at

316. Also, as with a Section 1 claim, a plaintiff must define the relevant market. *Doctor's Hosp. v. Southeast Medical Alliance*, 123 F.3d 301, 311 (5th Cir. 1997); *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics Inc.*, No. 5:17-cv-1295-RCL, 2022 U.S. Dist. LEXIS 60676, *24 (W.D. Tex. Mar. 21, 2022). "Agreements that do not harm the competitive process do not amount to a conspiracy to monopolize." *Drs. Hosp. of Laredo v. Cigarroa*, 782 F.Supp.3d 406, 456 (W.D. Tex. 2025) (citing *Nynex Corp. v. Discon, Inc.*, 525 U.S. 128, 139 (1998)). Rather, a plaintiff must establish an anticompetitive effect resulting from an alleged conspiracy to monopolize. *Id.* at 456-57.

21. As with A2K's Section 1 claim, A2K has failed to allege facts supporting any claim of a conspiracy between Fluor and B&H. *See supra*, Section I.A. A2K has also failed to properly define a relevant market. *See supra*, Section I.B. Further, A2K does not allege any anticompetitive effects such as reduced output or increased prices in its alleged market. *See supra*, Section I.C. Instead, A2K's allegations are that Fluor operated in a competitive market (Dkt. 1 at ¶ 2 admitting Fluor was selected as one of four prime contractors by FEMA) and that there was a competitive market for subcontractors to Fluor (Dkt. 1 at ¶¶ 3-4). Fluor's decision to no longer utilize A2K's services and instead use the services of fifteen other subcontractors actually demonstrates competition in action, negating A2K's claim. A2K also does not allege any facts to support an effect on a substantial amount of interstate commerce. Thus, A2K has failed to plead sufficient facts to state a claim for conspiracy to monopolize. This claim arising out of Section 2 of the Sherman Act should be dismissed.

**C.      A2K fails to state a claim for unjust enrichment (Count IV).**

22. Several Texas Courts of Appeal have held there is no independent cause of action for unjust enrichment, but others have held there is, and the Texas Supreme Court has mentioned a cause of action for unjust enrichment. *ED&F Man Biofuels, Ltd. v. MV Fase*, 728 F.Supp.2d 862, 869 (S.D. Tex. 2010); *see Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560-61 (N.D. Tex. 2009) (and cases cited and discussed therein). What appears to be the closest claim asserted by A2K based within the concept of unjust enrichment is one for "money had and received." Such a claim requires a plaintiff to prove that a defendant holds money which in equity and good conscience belongs to the plaintiff. *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied) (citing *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 163 (Tex. 2007)). Texas courts have allowed restitution for money had and received in cases brought by a defrauded party against the party who committed the fraud, by a party that made an overpayment, and by a party that paid or credited money to the wrong person or account. *Edwards*, 252 S.W.3d at 837-38.

23. In this case, A2K does not allege any facts demonstrating a valid claim against B&H for unjust enrichment or money had and received. A2K offers no factual explanation or basis for the conclusory allegation that B&H holds money that in equity and good conscience belongs to A2K. A2K admits that it was never entitled to receive business from Fluor under its subcontract, and A2K does not allege that it had already earned money from Fluor that was instead given to B&H. Dkt. 1, ¶ 26. Instead, A2K admits that all the work it did which forms the basis of its unjust enrichment claim was work it already had

to do just to cultivate the list of TAC workers to even offer to Fluor, all of which Fluor could totally reject, resulting in A2K never recouping the costs of that work. *See id.* at ¶¶ 23-26; *cf. id.* 1 at ¶ 105.

24. And A2K does not allege any facts showing that B&H was otherwise unjustly enriched. A2K does not allege that it lost business from Fluor because B&H made false or defamatory statements about A2K to Fluor. A2K does not allege that Fluor chose to do business with B&H over A2K because B&H fraudulently or independently changed the alignment of TAC workers that had been affiliated with A2K. Rather, A2K merely alleges that B&H's representative contacted TAC workers with inquiries about alignment "per Fluor." A2K admits that the TAC workers could choose which subcontractor to work for, and that A2K's TAC relationships were through (presumably at-will) independent contractor agreements. Dkt. 1 at ¶¶ 22, 23.

25. At its heart, as alleged, A2K's unjust enrichment claim is a complaint that A2K had to compete for obtaining business with Fluor and for obtaining workers to provide to Fluor, and A2K did not win in that competition. That is not a basis for unjust enrichment. This cause of action should be dismissed.

   D.   **A2K fails to state a claim for tortious interference with existing contract or prospective business relations (Counts VI & VII).**

26. A claim for tortious interference with an existing contract requires a showing of "(1) the existence of a contract subject to interference, (2) willful and intentional interference; (3) the willful and intentional interference caused damage; and (4) actual damage or loss occurred." *Inwood Nat'l Bank v. Fagin*, 706 S.W.3d 342, 347 (Tex. 2025). For

a contract to be subject to interference, it must contain an enforceable contract right, which does not exist when a defendant retains discretion over a claimed contractual benefit. *Id.* at 347, 351. In addition, inducing a contracting party to do what it had a right to does not constitute actionable interference. *Id.* at 347; *see also, Faucette v. Chantos*, 322 S.W.3d 901, 914 (Tex. App.—Houston [14th Dist.] 2010) ("merely inducing one of the parties to exercise his right to terminate contractual relations after giving the required notice does not necessarily constitute tortious interference with contract under Texas law.") (quoting *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc..*, 793 S.W.2d 660, 667 (Tex. 1990)) .

27. Here, A2K admits that it did not have an enforceable contract right to have Fluor select its TACs; rather, Fluor had complete discretion to choose or not choose any of A2K's TACs. Dkt. 1 at ¶ 26. Thus, B&H could not have interfered with A2K's subcontract with Fluor as A2K alleges.

28. Further, A2K admits that the TACs could choose what subcontractor they wanted to work with, and that there was no prohibition by FEMA against the movement of TACs to different subcontractors. Dkt. 1 at ¶¶ 3, 23. A2K otherwise does not allege it had an enforceable contract right in any of its agreements with TACs; rather, they were presumably at-will agreements like most independent contractor or employee relationships. *See* Dkt. 1 at ¶ 22. Even if B&H did somehow persuade TACs to leave A2K and work for B&H, such would have been no more than encouraging the TACs to do something they had the right to do, which is not actionable as interference.

29. A2K also fails to state a claim for tortious interference with prospective business relations because such claim requires that the alleged interference be independently tortious or unlawful. *United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 211 (5th Cir. 2020) (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) (internal quotations omitted)). When the predicate tort claim fails, so too does the derivative tortious interference claim. *See Wal-Mart Stores*, 52 S.W.3d at 726. Because A2K fails to state valid claims for defamation or business disparagement against B&H, as discussed in other parts of this brief, it fails to state a valid claim for tortious interference with prospective business relations. *See* Dkt. 1 at ¶¶ 144, 149 (asserting defamation and business disparagement as the basis for A2K's claim for tortious interference with prospective business relations against B&H).

**E.    A2K fails to state a claim for civil conspiracy (Count X).**

30. Civil conspiracy is a derivative claim that requires a conspiring defendant to have engaged in an underlying tort for liability to attach. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) ( "[L]iability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable."). A2K alleges fraud, tortious interference with an existing contract, tortious interference with prospective business relations, defamation, and business disparagement as the basis for its civil conspiracy claim. Dkt. 1 at ¶ 170. As discussed elsewhere in this brief, A2K fails to state valid claims for tortious interference with an existing contract, tortious interference with prospective business relations, defamation, or business disparagement

against B&H. A2K does not allege B&H committed fraud. Therefore, these alleged torts cannot provide a basis for A2K's claim of civil conspiracy.

31. Insofar as A2K's civil conspiracy claim against B&H is based on these alleged torts having been allegedly committed by Fluor:

a.  The claim against Fluor for fraud has no plausible basis. It is not plausible that A2K could have justifiably relied on alleged misrepresentations by Fluor that TACs would be utilized through A2K, because such representations were contradictory to Fluor's right to not select A2K-aligned TACs (*see* Dkt. 1 at ¶ 152, 154; *id.* at ¶ 26 (admitting Fluor had no obligation to use TACs through A2K under their contract); *Roxo Energy Co., LLC v. Baxsto, LLC*, 713 S.W.3d 404, 409 (Tex. 2025) (stating a party is not justified in relying on representations that contradict the express terms of a written agreement as a matter of law));

b.  The claim against Fluor for tortious interference with A2K's existing contracts with TACs has no basis for the same reasons A2K's claim for such against B&H has no basis (*see supra*, Section IV);

c.  The claim against Fluor for tortious interference with A2K's prospective contracts with TACs has no basis for the same reasons A2K's claim for such against B&H has no basis (*see supra*, Section IV; Dkt. 1 at ¶ 140 (asserting fraud as the independently tortious basis for A2K's claim against Fluor); and,

d.  The claims against Fluor for defamation and business disparagement have no basis because A2K fails to allege sufficient facts to show Fluor published any defamatory or disparaging statements to a third party (*see* Dkt. 1 at ¶¶ 176-77, 185-

186 (conclusorily alleging Fluor published a false accusation against A2K to third parties without alleging when or where the statement was published); *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023) (listing publication of a defamatory statement to a third party as an element of defamation); *Mandawala v. Northeast Baptist Hosp.*, 16 F.4th 1144, 1153 (5th Cir. 2021) (requiring pleading when and where an alleged defamatory statement was published to survive a 12(b)(6) motion to dismiss); *Hurlbut v. Gulf Atl. Life Ins.*, 749 S.W.2d 762, 766 (Tex.1987) (listing publication of disparaging words to a third party an element of business disparagement)).

32. Because A2K has also failed to state valid claims for fraud, tortious interference with an existing contract, tortious interference with prospective business relations, defamation, or business disparagement against Fluor, there is no basis for A2K's claim of civil conspiracy.

F.    **A2K fails to state a claim for defamation or business disparagement (Counts XI and XII).**

33. A defamation plaintiff must prove "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). Only statements reasonably capable of a defamatory meaning can be defamatory, and a defamatory statement is a statement of fact that tends to harm a plaintiff's reputation. *Innovative Block v. Valley Builders Sup.*, 603 S.W.3d 409, 419 (Tex. 2020). A corporation may sue for defamatory statements about its professional

reputation and practices. *Id.* A claim for business disparagement requires (1) the publication of a false, disparaging statement concerning the product of another, (2) published with malice, (3) with the intent that the publication cause pecuniary loss or the reasonable recognition that it will, and (4) pecuniary loss does result. *Id.* at 417.

34. A2K fails to allege a plausible claim that any statement published by B&H was defamatory or disparaging about its product. A2K alleges that B&H published false statements about its status as a Fluor subcontractor to TAC workers, but the only statements A2K identifies in its Complaint are a statement that "[t]he head woman at Fluor" put a TAC on B&H's team and that "[i]t's the head person that counts," and a statement that "A2K is no longer part of [the HPCC Fires] project (per Fluor)." *See* Dkt. 1 at ¶¶ 45, 67, 182, 190, 191. Neither of these statements are capable of a defamatory meaning because they say nothing about A2K's reputation, nor are they disparaging statements about A2K's product. They are merely statements of neutral fact, for which A2K cannot recover under theories of defamation or business disparagement. *See* Dkt. 1 at ¶ 75, Exhibit 7. Thus, Counts XI and XII must be dismissed.

### G.   A2K fails to state a claim for unfair competition by common law misappropriation (Count XIII).

35. Claims for unfair competition by common law misappropriation require a plaintiff to show: "(1) the creation of plaintiff's product through extensive time, labor, skill, and money; (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff; and (3) commercial

damage to the plaintiff." *Vertex Servs., LLC v. Oceanwide Houston, Inc.*, 583 S.W.3d 841, 849 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

36. A2K has failed to state a valid claim for common law misappropriation because it has not alleged it created any product capable of being misappropriated. In a similar case to this, *Vertex Servs.*, the plaintiff, a supplier of offshore labor and staffing to clients in the energy industry, lost contracts with its foreign labor supplier and oil and gas client. 583 S.W.3d at 845. The oil and gas client invited one of the plaintiff's competitors to bid on supplying the client's foreign labor, and the competitor ultimately won the bid and entered into a contract requiring it to ensure it could provide the same foreign laborers that were previously supplied through the plaintiff or related entities. *Id*. at 846, 847. The plaintiff filed suit against the competitor, asserting that it had "stolen" the laborers the plaintiff had spent time and money locating and developing for its previous contract with the client, and then offered the laborers to the client, thereby "forc[ing] [the plaintiff] out of the loop and adversely effect[ing] its business." *Id*. at 845, 847. The plaintiff asserted that the competitor had misappropriated plaintiff's knowledge of the sourcing and provision of offshore labor, including its institutional knowledge used to craft the pool of labor it supplied, the training and certification it provided to the labor pool, and its ability to navigate international customs related to retaining the foreign labor. *Id*. at 849. However, the Houston Court of Appeals found that these things did not constitute products capable of misappropriation. *Id*. at 850 (citing *Thomason v. Collins & Aikman Floorcoverings, Inc.*, No. 04-02-00870-CV, 2004 Tex. App. LEXIS 2823, *4 (Tex. App.—San

Antonio Mar. 31, 2004, pet. denied) (mem. op.) (finding that a plaintiff's time, labor, and skill are not work product subject to appropriation by a competitor)).

37. In this case, A2K lost its contract with Fluor, B&H won a contract with Fluor, and A2K now accuses B&H of misappropriating the time, labor, and money A2K expended to locate and provide TAC workers to Fluor and using such in competition with A2K. Dkt. 1 at ¶ 194. The time, labor, and money A2K alleges it expended and was misappropriated are similar to the efforts the plaintiff in *Vertex Servs.* alleged were misappropriated: knowledge of locating laborers that could complete the work,[3] performing tasks to prepare the laborers for the work,[4] and navigating complex processes to clear the laborers to work.[5] *Cf.* Dkt. 1 at ¶ 194; *Vertex Servs.*, 583 S.W.3d at 849. These are not products capable of being misappropriated. *Vertex Servs.*, 583 S.W.3d at 850. Thus, A2K has failed to state a valid claim for unfair competition through common law misappropriation, and that claim should be dismissed.

### Conclusion and Prayer

For all these reasons set forth in this brief and Motion, and subject to its Rule 12(b)(2) Motion to Dismiss, B&H asks the Court to grant this motion to dismiss.

---

[3] i.e., A2K's time reviewing resumes and interviewing laborers as compared with the *Vertex Servs.* plaintiff's knowledge used to build its labor pool.

[4] i.e., A2K's verification and uploading of onboarding documentation, generating Fluor formatted resumes, and ensuring all TACs received and reviewed all FEMA required training materials as compared with the *Vertex Servs.* plaintiff's training and certification of laborers.

[5] i.e., A2K obtaining information for FEMA's security clearance process and assisting TACs in navigating the complex security clearance process as compared with the *Vertex Servs.* plaintiff's navigation of international customs issues.

Dated: March 20, 2026.

Respectfully submitted,

**Touchstone, Bernays, Johnston,
Beall, Smith & Stollenwerck, L.L.P.**

By: */s/ Marcus Tolliver*
   Marcus Tolliver-SBN: 24079646
   Amie Fordan-SBN: 24036580
   Kristen M. Azzolini-SBN: 24092853
   901 Main Street, Suite 6200
   Dallas, Texas 75202
   214-741-1166
   214-741-7548 (fax)
   marc.tolliver@tbjbs.com
   amie.fordan@tbjbs.com
   kristen.azzolini@tbjbs.com
**Attorneys for B&H Claim Services, Inc.**

## Certificate of Service

This is to certify that this Rule 12(b)(6) Motion to Dismiss, with Brief in Support, has been served on all counsel of record for the other parties via the Court's electronic filing system and email pursuant to the Federal Rules of Civil Procedure on this 20th day of March 2026.

*/s/ Marcus Tolliver*
Marcus Tolliver