**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| A2K, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>FLUOR FEDERAL SERVICES, INC., AND<br>B&H CLAIMS SERVICE, INC.,<br><br>    Defendants. | No. 3:26-cv-00206-N |

**PLAINTIFF A2K, INC'S. RESPONSE IN OPPOSITION TO
DEFENDANT B&H CLAIMS SERVICE, INC.'S 12(B)(2) MOTION TO DISMISS
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................................1

II.     EVIDENCE OFFERED IN OPPOSITION...................................................5

III.    FACTUAL BACKGROUND ....................................................................5

        A.    Fluor Enterprises, Inc. Is Domiciled in Texas ......................................6

        B.    B&H Enters a Subcontract with a Texas Corporation and Begins Targeting
              Texas–Resident TACs ........................................................................6

        C.    B&H's Longstanding Disaster Relief Operations in Texas....................8

IV.     LEGAL STANDARD ..........................................................................9

        A.    Plaintiff's Burden at the Rule 12(b)(2) Stage .........................................9

        B.    The Fifth Circuit's Three–Part Specific Jurisdiction Test ....................10

        C.    General Jurisdiction Analysis ...............................................................11

V.      ARGUMENT.......................................................................................12

        A.    This Court Has Specific Personal Jurisdiction Over B&H...................12

              1.    B&H Purposefully Directed Its Activities at Texas................. 12

              2.    B&H Directed Intentional Torts at Texas Residents ............... 16

              3.    A2K's Claims Arise Out of or Relate to B&H's Texas
                    Directed Contacts..................................................................... 19

              4.    Exercising Jurisdiction Over B&H Comports with Fair Play and
                    Substantial Justice.................................................................... 20

        B.    General Jurisdiction Exists Due to B&H's Continuous and System
              Contacts with Texas............................................................................22

        C.    In the Alternative, A2K Requests Limited Jurisdictional Discovery to
              Establish Personal Jurisdiction. .........................................................24

        D.    If This Court Finds Insufficient Evidence to Exercise Personal Jurisdiction
              Over B&H, It Should Transfer Rather Than Dismiss This Lawsuit.....25

VI.     CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adams v. Unione Mediterranea Di Sicurta*,
  364 F.3d 646 (5th Cir. 2004) ........................................................................................ 15

*Ancor Holdings, L.P. v. Landon Capital Partners, L.L.C.*,
  114 F.4th 382 (5th Cir. 2024) ...................................................................................... 15

*Blessey Marine Services, Inc. v. Jeffboat, LLC*,
  No. 10–1863, 2011 WL 651999 (E.D. La. Feb. 10, 2011) ........................................ 30

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017) ...................................................................................................... 17

*Bristol-Myers Squibb Co. v. Superior Court*,
  582 U.S. 255 (2017) ........................................................................................... 9, 16, 25

*Bullion v. Gillespie*,
  895 F.2d 213 (5th Cir. 1990) ................................................................................ 11, 15

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................... 7, 9, 16, 17, 19, 20, 21, 26, 27

*Calder v. Jones*,
  465 U.S. 783 (1984) ................................................................................... 8, 9, 16, 23

*Central Freight Lines v. APA Transport Corp.*,
  322 F.3d 376 (5th Cir. 2003) ................................................................................ 22, 23

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................................ 10, 17, 28, 29

*Defense Distributed v. Gewal*,
  971 F.3d 485 (5th Cir. 2020) ...................................................................................... 22

*Dubin v. United States*,
  380 F.2d 813 (5th Cir. 1967) ...................................................................................... 31

*Electrosource, Inc. v. Horizon Battery Techs., Ltd.*,
  176 F.3d 867 (5th Cir. 1999) ................................................................................ 19, 27

*Enviro Petroleum, Inc. v. Kondur Petroleum*,
  79 F. Supp. 2d 720 (S.D. Tex. 1999) .................................................................... 26, 27

*Fielding v. Hubert Burda Media, Inc.*,
415 F.3d 419 (5th Cir. 2005) ................................................................................... 10, 30

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
592 U.S. 351 (2021) .............................................................................................. 9, 10, 25

*Frank v. PNK (Lake Charles)*,
947 F.3d 331 (5th Cir. 2020) ........................................................................................ 29

*Freudensprung v. Offshore Tech. Servs.*,
379 F.3d 327 (5th Cir. 2004) ....................................................................................... 9, 21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......................................................................................... 16, 17, 28

*Gose v. Native Am. Servs. Corp.*,
109 F.4th 1297 (11th Cir. 2024) ................................................................................. 8, 12

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*,
815 S.W.2d 223 (Tex. 1991) ............................................................................................ 26

*Guidry v. U.S. Tobacco Co.*,
188 F.3d 619 (5th Cir. 1999) ................................................................................ 15, 22, 27

*Herman v. Cataphora, Inc.*,
730 F.3d 460 (5th Cir. 2013) ........................................................................................ 31

*Holt Oil & Gas Corp. v. Harvey*,
801 F.2d 773 (5th Cir. 1986) ....................................................................................... 9, 21

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ........................................................................................................ 17

*Johnston v. Multidata Sys. Int'l Corp.*,
523 F.3d 602 (5th Cir. 2008) ......................................................................................... 15

*Jones v. Petty–Ray Geophysical, Geosource, Inc.*,
954 F.2d 1061 (5th Cir.1992) ................................................................................... 15, 16

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
213 F.3d 841 (5th Cir. 2000) ......................................................................................... 11

*Kitty Hawk Aircargo, Inc. v. Chao*,
418 F.3d 453 (5th Cir. 2005) ............................................................................................ 8

*McGee v. Int'l Life Ins. Co.*,
355 U.S. 220 (1957) ........................................................................................................ 27

iii

*Mink v. AAAA Dev. LLC*,
    190 F.3d 333 (5th Cir. 1999) ................................................................................... 15

*Mullins v. TestAmerica, Inc.*,
    564 F.3d 386 (5th Cir. 2009) ............................................................................ 16, 24

*Panda Brandywine Corp. v. Potomac Electric Power Co.*,
    253 F.3d 865 (5th Cir. 2001) ................................................................................... 24

*Perkins v. Budget Consolidated Mining Co.*,
    342 U.S. 437, (1952)................................................................................................ 28

*Quick Techs., Inc. v. Sage Grp. PLC*,
    313 F.3d 338 (5th Cir. 2002) ................................................................................... 15

*Sangha v. Navig8 ShipManagement Private Ltd.*,
    882 F.3d 96 (5th Cir. 2018) ..................................................................................... 17

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985) ................................................................................. 18

*Thompson v. Chrysler Motors Corp.*,
    755 F.2d 1162 (5th Cir. 1985) ................................................................................. 15

*Toys "R" Us, Inc. v. Ste*p Two, S.A.,
    318 F.3d 446 (3d Cir. 2003)..................................................................................... 30

*Travelers Health Ass'n v. Virginia*,
    339 U.S. 643 (1950)................................................................................................. 21

*Trois v. Apple Tree Auction Ctr., Inc.*,
    882 F.3d 485 (5th Cir. 2018) ................................................................................... 22

*Walden v. Fiore*,
    571 U.S. 277 (2014)................................................................................................. 22

*Wien Air Alaska, Inc. v. Brandt*,
    195 F.3d 208 (5th Cir. 1999) ............................................................... 9, 10, 16, 17, 21

*World–Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)........................................................................................ 7, 16, 27

iv

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ........................................................................1, 5, 6, 9, 12

Local Rule 7.1(i) ....................................................................................................................5

**Statutes**

28 U.S.C. § 1406(a) ........................................................................................................ 11, 30

## I.    INTRODUCTION

Defendant B&H Claims Service, Inc. ("B&H") moves to dismiss A2K, Inc.'s ("A2K") claims against it under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The motion should be denied. As set forth below and in the argument that follows, this Court has *specific* personal jurisdiction over B&H and, independently, *general* personal jurisdiction as well. On the specific-jurisdiction question, A2K will demonstrate that B&H's motion fails at every step of the Fifth Circuit's established framework: (1) B&H purposefully directed its activities at the State of Texas by contracting with a Texas domiciled corporation and then using that contract as a vehicle to aim intentional torts at Texas resident Technical Assistance Contractors ("TACs"); (2) each of A2K's claims against B&H arises directly from those Texas directed contacts; and (3) exercising jurisdiction comports with traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The facts leave no room for B&H's portrayal of itself as a distant, uninvolved company with no meaningful ties to Texas. B&H did not stumble into Texas through random or attenuated contacts. It deliberately reached into this State–first, by contracting with a Texas domiciled corporation, and second, by using that contractual foothold as a platform from which to direct intentional torts at Texas based TACs, causing foreseeable and substantial harm felt in this forum. Having made those choices, B&H should have reasonably anticipated being hauled into a Texas court to answer for them. *See Burger King*, 471 U.S. at 474–75; *World-Wide Volkswagen*, 444 U.S. at 297.

B&H's principal jurisdictional argument is that it contracted with a separate entity, Fluor Enterprises, Inc., that resides in South Carolina as opposed to Defendant Fluor Corporation. That argument is built upon a false premise. Fluor Enterprises, Inc. is, in fact, domiciled in Irving, Texas

as confirmed by its registration in the federal System for Award Management ("SAM.gov") database.[1] Thus, B&H purposefully reached into Texas to transact business with a Texas corporation rather than passively contacted with an entity it believed to be domiciled elsewhere.

But B&H's contacts with Texas do not end with the above contract. B&H then weaponized its contractual relationship with a Texas corporation to commit a series of intentional torts directed at individuals with deep ties to this forum, satisfying the purposeful-direction inquiry under *Calder v. Jones*, 465 U.S. 783, 789–90 (1984) and its progeny. As detailed in the Complaint, B&H's President, Gary Perna, personally and repeatedly contacted A2K-aligned TACS–at least 14 of whom are Texas residents–with false and misleading communications designed to induce those TACs to abandon their existing contractual relationships with A2K and realign with B&H. Opp'n App. at Ex. H (Wilson Decl.) ¶¶ 10–16; ECF No. 1, Compl. ¶¶ 45, 62, 68. On September 22, 2025, Perna sent an email to various TACs falsely stating that "A2K is no longer part of this project (per Fluor)"–a demonstrably false assertion made to intimidate A2K-aligned TACs into abandoning A2K's roster for B&H. *Id.* ¶ 67, Ex. 5. These communications constitute tortious interference with existing contracts, tortious interference with prospective business relations, defamation, business

---

[1] The Court may take judicial notice of the filings in *Herzog v. Fluor Federal Services, Inc.*, No. 0:25-cv-61991-MD (S.D. Fla.), including the Complaint and the Statement of Interest filed by the United States Department of Justice. Under Federal Rule of Evidence 201(b), a court may judicially notice a fact that "is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

The database constitutes a publicly available government record of which this Court may take judicial notice. *See Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1308 n.13 (11th Cir. 2024) (taking judicial notice of information on SAM.gov); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (recognizing that courts may take judicial notice of information where the factual matter asserted is "capable of accurate and ready determination by resort to a source whose accuracy on the matter cannot reasonably be questioned").

disparagement, and civil conspiracy–all intentional torts deliberately aimed at Texas residents and causing foreseeable harm in Texas. *See generally* ECF No. 1, Compl.

The connection between B&H's Texas direct contacts and A2K's claims is not incidental–it is dispositive. Every cause of action asserted against B&H arises directly from B&H's decision to contract with a Texas corporation and aim tortious communications at Texas resident TACs. The relatedness prong is satisfied in full. *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 362 (2021); *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017).

This case is a far cry from the scenario painted by B&H of one single, passive contract with a company that merely "happens to" reside in a given forum. *Cf. Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 344–45 (5th Cir. 2004). Unlike a defendant whose sole forum contact was an arm's length purchase agreement with a Texas party, B&H *affirmatively* entered a continuing contractual relationship with a Texas domiciled company and then *affirmatively* exploited that relationship to aim its tortious conduct at Texas residents.

The Fifth Circuit has long recognized that when the "actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful available." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *see also Calder*, 465 U.S. at 789–90 (1984) (specific jurisdiction proper where defendants' intentional conduct was "expressly aimed" at the forum state and they "knew that the brunt of [the] injury would be felt" there). B&H knew precisely where the harm of its false statements would land—in the hands and livelihoods of TACs residing in Texas—as it sought to destroy A2K's contractual relationships for its own financial gain. Texas is "the focal point both of the [tortious conduct] and of the harm suffered." *Calder*, 465 U.S. at 789.

Moreover, exercising jurisdiction over B&H comports with fair play and substantial justice. A corporation that deliberately contracts with a Texas entity, exploits that relationship to commit intentional torts aimed at Texas residents, and profits from the resulting harm, can hardly complain that it is unfair to answer for that conduct in a Texas court. *See Burger King*, 471 U.S. at 476–77; *Wien Air Alaska*, 195 F.3d at 215 ("It is rare to say the assertion [of personal jurisdiction] is unfair after minimum contacts have been shown."). Texas has a substantial interest in providing a forum for the resolution of claims arising from intentional torts directed at its residents. This Court has specific personal jurisdiction over B&H.

As a secondary and independent basis for jurisdiction, the record also supports general jurisdiction over B&H. B&H is no stranger to this State. Upon information and belief, B&H has performed disaster relief work physically within the borders of Texas for at least eighteen years, entered into at least four subcontracts for federal disaster relief work in Texas in the past nine years, and publicly advertises that it has performed disaster relief work within the borders of Texas since 2008, reflecting the type of "substantial and continuous contacts" with this forum that are sufficient to render B&H "essentially at home" in Texas for jurisdictional purposes. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 358 (2021). While A2K recognizes that general jurisdiction imposes an "exacting standard," *see Daimler*, 571 U.S. at 137, A2K submits that B&H's extended, in–state disaster relief operations over nearly two decades constitute the kind of exceptional case contemplated by the Supreme Court and the Fifth Circuit.

Finally, should this Court determine that the existing record is insufficient to maintain jurisdiction at this stage, A2K respectfully requests that the Court grant limited jurisdictional discovery before dismissing this action. Discovery into B&H's full scope of contacts with Texas,

4

including the details of its contact with Fluor Enterprises, the Texas residency of targeted TACs, and the extent of B&H's longstanding disaster–relief operations in this State, would confirm what the existing allegations already strongly suggest—that B&H purposefully availed itself of the privilege of conducting activities within the State. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (jurisdictional discovery should be sustained where plaintiff presents factual allegations that "suggest with reasonable particularity the possible existence of the requisite contacts"); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000). And if this Court ultimately determines that personal jurisdiction cannot be sustained, even after discovery, A2K respectfully requests that, rather than dismissing this action outright, the Court transfer this case to a proper venue under 28 U.S.C. § 1406(a) in the interest of justice, so that A2K's meritorious claims against B&H may be adjudicated on the merits.

Accordingly, B&H's Rule 12(b)(2) Motion to Dismiss (ECF No. 28) should be denied.

## II.     EVIDENCE OFFERED IN OPPOSITION

In compliance with Local Rule 7.1(i), A2K relies on evidence included in a separately filed Appendix.[2] Evidence in the Appendix includes: (1) a declaration of Zachary Wilson, officer of A2K; (2) government registration documents confirming B&H contracted with a corporation domiciled in Texas; (3) contract summaries of disaster relief work performed by B&H within Texas from 2016 to the present; and (4) documentation from B&H's website demonstrating systematic and continuous contacts within the State.

## III.     FACTUAL BACKGROUND

The following facts are drawn from A2K's Complaint (ECF No. 1), the exhibits attached thereto, the Declaration of Gary Perna filed in support of B&H's Motion (ECF No. 28–1 at 2), and

---

[2] This Appendix is referenced in this Opposition and Memorandum of Law using the notation "Opp'n App."

A2K's separately filed Opposition Appendix (Opp'n App.). Where the parties' evidence conflicts, all disputes are resolved in A2K's favor. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

## A.    Fluor Enterprises, Inc. Is Domiciled in Texas

B&H's jurisdictional defense rests on the premise that it contracted with a South Carolina entity and therefore, had no reason to anticipate being haled into a Texas court. ECF No. 28, B&H Fed. R. Civ. P. 12(b)(2) Mot. To Dismiss ¶ 17; ECF No. 28–1, Appx. ¶ 4. That premise is false. Fluor Enterprises, Inc., which B&H identifies as its contracting counterparty, is registered in the federal System for Award Management ("SAM.gov") database with a physical address of 100 Fluor Daniel Drive, Greenville, South Carolina, but is *domiciled* as a Texas corporation with its legal business address at 6700 Las Colinas Boulevard, Irving, Texas, 75039. Opp'n App. Ex. G (SAM.gov Reg.) at 34. This Court may take judicial notice of SAM.gov records as official government records whose accuracy cannot reasonably be questioned. *See Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1308 n.13 (11th Cir. 2024); Fed. R. Evid. 201(b). B&H thus contracted with a corporation domiciled in Texas, and that is a central fact to this Court's jurisdictional analysis.

## B.    B&H Enters a Subcontract with a Texas Corporation and Begins Targeting Texas–Resident TACs

Upon information and belief, B&H previously served as a subcontractor to CH2M Hill – CDM PA TAC Recovery Services ("CCPRS") a separate FEMA prime contractor whose contract for the Hermits Peak Calf Canyon Fires in New Mexico ("HPCC Fires") expired on August 15, 2025. ECF No. 1, Compl. ¶¶ 30–34. On August 15, 2025, CCPRS's contract expired and Fluor became the sole prime contractor for HPCC Fires disaster relief work. *Id.* ¶ 33–34. Accordingly, B&H no longer had a contract under which it could provide TACs to work on the HPCC Fires. *Id.* ¶ 34.

Beginning in August 2025, at Fluor's request, A2K onboarded approximately thirty TACs for deployment on the HPCC Fires, including at least sixteen individuals specifically identified by FEMA for continued deployment. *Id.* ¶ 37–40, 42–43. A2K expended significant time and resources on behalf of each TAC—reviewing resumes, conducting interviews, obtaining security clearance information, navigating FEMA's background investigation process, generating Fluor–formatted resumes, and coordinating onboarding through Fluor's portal—to ensure these TACs could deploy under Fluor's prime contract. *Id.* ¶ 44. A2K entered separate TAC contracts with each of these individuals. *Id.* ¶ 43.

Shortly after these TACs were onboarded with A2K for Fluor's prime contract, B&H's President, Gary Perna, personally and repeatedly contacted A2K–aligned TACs and disseminated false information to coerce them into working for B&H. *See id.* ¶¶ 45, 59, 67. On August 28, 2025, Perna contacted Chris Smith, a Texas resident and A2K–aligned TAC with no prior affiliation with B&H and falsely asserted Smith could work on the HPCC fires only if he did so with B&H. *Id.* ¶ 45. To bolster this false claim, Perna asserted that the restriction was imposed by Fluor, stating "the head woman at Fluor put you on our team, not [A2K's]." *Id.* ¶ 45, Ex. 2. For several weeks thereafter, B&H, acting through Perna, "repeatedly attempted to lure multiple A2K–aligned TACs with similar false information." *Id.* ¶ 49.

In a separate instance, on September 22, 2025, Perna sent an email to various TACs stating: "FYI, A2K is no longer part of this project (per Fluor) so if you are waiting for a call on this project from them you might be waiting a long time. Feel free to call us." *Id.* ¶ 67, Ex. 5. This statement was demonstrably false at the time it was made: A2K had fifteen TACs actively deployed under Fluor to the HPCC Fires. *Id.* ¶ 68. As before, Perna invoked B&H's contractual relationship with

Fluor Enterprises, Inc., to lend legitimacy to the false statement and to induce A2K–aligned TACs to "[f]eel free to join us." *Id.* ¶ 67, Ex. 5.

At least fourteen of the TACs targeted by these communications are Texas residents. Opp'n App. Ex. H (Wilson Decl.) ¶¶ 10–15. The tortious communications caused foreseeable injury in Texas: TACs residing in Texas were induced to abandon their contractual relationships with A2K against their will, and A2K lost the value of its onboarding investment and ongoing revenue stream. Opp'n Aff. Ex. H (Wilson Decl.) ¶ 16; ECF No. 1, Compl. ¶¶ 81, 106, 131–35, 174.

**C.     B&H's Longstanding Disaster Relief Operations in Texas**

B&H's contacts with Texas extend well beyond the Fluor Enterprises subcontract and the tortious conduct directed at A2K's Texas–resident TACs. Upon information and belief, B&H has performed disaster relief work physically within the borders of Texas on a recurring basis for at least eighteen years, deploying TACs and other personnel to Texas disaster sites and operating within the State in connection with FEMA disaster recovery missions. Opp'n App. Exs. A-F at 2, 4, 8, 14, 20, 22, 26, 30. Based upon publicly available information, B&H has entered into no less than four subcontracts to perform federal disaster relief work in Texas since 2017. *Id*. at Exs. A-D (B&H Subcontracts), 2, 4, 14, 20, 22, 26. B&H's own website holds itself out as providing disaster relief services in Texas specifically. B&H's website includes a section touting "Project Highlights" in which three of the five highlights describe federal disaster recovery work performed by B&H physically in Texas. *Id.* at Ex. F (B&H Texas Work), 30. This includes work in the Lower Rio Grande Valley as part of Hurricane Dolly (2008) recovery and work in Galveston County and southeast Texas as part of the States recovery from Hurricane Ike (2008). *Id*. B&H's website includes a link for its affiliates to register as a licensed insurance adjuster in Texas. *Id.* at Ex. E (B&H Texas Licensure), 26 It does not include such links to become licensed in any other state. *Id.*

These contacts are substantial, continuous, and systematic, spanning nearly two decades and encompassing multiple Presidentially declared disasters in Texas. *Id.* These longstanding in–state operations form the basis for A2K's secondary argument that the Court may also exercise general jurisdiction over B&H.

## IV.     LEGAL STANDARD

### A.     Plaintiff's Burden at the Rule 12(b)(2) Stage

When a nonresident defendant challenges personal jurisdiction under Fed. R. Civ. P 12(b)(2), the plaintiff bears the burden of establishing the Court's jurisdiction over that defendant. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Where, as here, the Court rules on the motion without conducting an evidentiary hearing, '[t]he plaintiff is only required to make a prima facie showing of the facts on which jurisdiction is predicated.' *Ancor Holdings, L.P. v. Landon Capital Partners, L.L.C.*, 114 F.4th 382, 394 (5th Cir. 2024) (citing *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir. 2004)). Proof by a preponderance of the evidence is not required. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citation omitted).

In evaluating whether a prime facie case has been established, the Court must accept as true the plaintiff's uncontroverted factual allegations and resolve all factual conflicts in the plaintiff's favor. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999). In making its determination, the Court may consider the contents of the record at the time of the motion, "including affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs.*, 313 F.3d at 344 (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

**B.**   **The Fifth Circuit's Three–Part Specific Jurisdiction Test**

A federal court sitting in Texas may exercise specific jurisdiction over a nonresident defendant if (1) the Texas long–arm statute confers jurisdiction over that defendant; and (2) the assertion of jurisdiction over the nonresident comports with the Due Process Clause of the Fourteenth Amendment. *Jones v. Petty–Ray Geophysical, Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992). Because the Texas long–arm statute extends to the limits of federal due process, the Court need only to determine whether jurisdiction over the defendant is constitutionally permissible through a single federal due process analysis. *Id.* at 1067–68 (citation omitted).

Due process permits a court to exercise specific jurisdiction over a nonresident defendant when three conditions are satisfied:

First, the defendant must have purposefully directed its activities at the forum state or purposefully availed itself of the privilege of conducting activities there, establishing "minimum contacts" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). The "purposeful availment" requirement ensures that a defendant is not haled into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (internal citation omitted). Rather, the defendant's contacts must be such that it "should reasonably anticipate being haled into court" in the relevant forum. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In the intentional–tort context, the *Calder* "effects test" provides that specific jurisdiction is proper where the defendant's intentional conduct was "expressly aimed" at the forum state and the defendant "knew that the brunt of th[e] injury would be felt" there. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 400 (5th Cir. 2009). In the Fifth Circuit, when the "actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

10

Second, the plaintiff's claims must "arise out of or relate to" the defendant's forum–directed contacts. *Bristol–Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Third, the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Once the plaintiff establishes minimum contacts and relatedness, the burden shifts to the defendant to make a "compelling case" that jurisdiction would be unreasonable. *Burger King*, 471 U.S. at 477. In evaluating reasonableness, the Court considers five factors: (1) the burden on the nonresident defendant; (2) the forum state's interest in the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in efficient resolution; and (5) the shared interest of the several states in furthering fundamental social policies. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018) (citing *Burger King*, 471 U.S. at 477). "It is rare to say the assertion [of personal jurisdiction] is unfair after minimum contacts have been shown." *Wien Air Alaska*, 195 F.3d at 215.

## C.    General Jurisdiction Analysis

Independent of specific jurisdiction, a court may exercise general jurisdiction over a corporate nonresident defendant when the defendant's affiliations with the forum state are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The "paradigm" forums for general jurisdiction over a corporation are generally its place of incorporation and principal place of business. *Id.*; *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). The Supreme Court has recognized, however, that a corporation's

11

operations in a forum (other than its place of incorporation or principal place of business) may be "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19.

For both specific and general jurisdiction, the Court should consider the totality of the circumstances in conducting the minimum contacts analysis and no single factor should be determinative. *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985) (citation omitted).

## V.    ARGUMENT

### A.    This Court Has Specific Personal Jurisdiction Over B&H

Applying the Fifth Circuit's three–part framework to the undisputed and uncontroverted facts set forth above, this Court has specific personal jurisdiction over B&H. B&H purposefully directed its activities at Texas, A2K's claims arise directly from those Texas–directed contacts, and exercising jurisdiction comports with fair play and substantial justice.

### 1.    B&H Purposefully Directed Its Activities at Texas

B&H established minimum contacts with by entering a continuing subcontract with Fluor Enterprises, Inc., a Texas–domiciled corporation and then leveraging that contractual foothold to direct intentional torts at A2K's Texas–resident TACs as alleged in the Complaint. ECF No. 1, Compl. ¶¶ 45, 59, 67. As set forth below and in Section 2, B&H's contract–based contacts and its tortious conduct each independently support a finding of purposeful direction.

B&H concedes that it entered a subcontract with Fluor Enterprises, Inc. ECF No. 28, B&H Fed. R. Civ. P. 12(b)(2) Mot. To Dismiss ¶ 17; ECF No. 28–1, Appx. ¶ 4. B&H argues, however, that Fluor Enterprises is a South Carolina entity, and that a single contract with an out–of–state party cannot "automatically establish sufficient minimum contacts." ECF No. 28, B&H Fed. R. Civ. P. 12(b)(2) Mot. To Dismiss ¶¶ 15–17 (citations omitted). This factual premise is wrong.

As demonstrated in the Opposition Appendix, Fluor Enterprises, Inc. is domiciled in Irving, Texas. Opp'n App. at Ex. G, 34. Its legal business address is 6700 Las Colinas Boulevard, Irving, Texas 75039, which is notably the same address as Defendant Fluor Corporation's principal place of business. That Fluor Enterprises maintains an operational office in Greenville, South Carolina does not change its domicile any more than a corporation's branch office changes its state of incorporation. B&H, therefore, contracted with a Texas corporation.

While a contract with a forum resident alone does not automatically establish jurisdiction, the Supreme Court has made it clear that a contract is not jurisdictionally irrelevant. *See Burger King*, 471 U.S. at 478. Instead, the contract is "ordinarily but an intermediate step serving to tie up prior negotiations and future consequences which themselves are the real object of the business transaction." *Id*. at 479. Courts must take a "highly realistic" approach, evaluating "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*. Here, B&H did not simply sign a one–off purchase agreement with a company that happened to be domiciled in Texas. Rather, B&H entered a continuing subcontract with a Texas corporation to provide TAC personal for an ongoing FEMA disaster relief mission—a relationship which, by its nature, contemplated wide—reaching contracts with the Texas–based primes contracting operation and generated "continuing obligations" between B&H and a Texas entity. *See Burger King*, 471 U.S. at 475–76; *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999) (determining that specific jurisdiction is proper where nonresident defendant entered into a continuing contractual relationship with a Texas company that "envision[ed] 'continuing and wide–reaching contacts'" with the forum).

Critically, B&H could not have carried out its intentional torts, as well as the alleged conspiracy to exclude A2K from the East Zone Disaster Relief Work Market, without first reaching

into Texas to contract with Fluor Enterprises, Inc. The Complaint alleges facts demonstrating B&H invoked its contract with this Texas corporation at every step in furtherance of the alleged conspiracy and intentional torts. B&H relied on that contract when it falsely told A2K–aligned TACs that they could not work for A2K because "the head woman at Fluor put you on our team not [A2K's]." ECF No. 1, Compl. ¶ 45, Ex. 2. B&H insisted that A2K–aligned TACs must realign with B&H rather than remain with A2K at Fluor's insistence. *Id.* And when B&H falsely proclaimed that A2K was no longer able to deploy TACs, it pointedly attributed the information was to Fluor to lend its false statements that imprimatur of a Texas–based prime contractor and to persuade TACs that they had no choice but to leave A2K and to join B&H. *Id.* ¶ 67, Ex. 5.

Every action B&H took in furtherance of the alleged conspiracy, and the substantial economic benefits B&H derived from displacing A2K's TACs and excluding A2K from the East Zone Disaster Relief Market, *Id.* ¶ 81, were predicated on B&H's deliberate decision to reach into Texas and contract with Fluor Enterprises, Inc. B&H could not have conspired with Fluor to exclude A2K from the market, disseminated false information about A2K's status, interfered with A2K's existing and prospective contractual relationships, or acquired the profits generated by A2K's onboarded TACs without the backing of its contract with Fluor Enterprises. Nor could B&H have given its false statements the veneer of legitimacy, invoking "the head woman at Fluor" and stating that A2K was no longer able to deploy TACs "per Fluor," without the contractual relationship with Fluor Enterprises. *Id.* ¶¶ 45, 67, Ex. 2, Ex. 5.

B&H's contract with Fluor Enterprises, Inc., a corporation that identified itself as domiciled in Texas in its registration to do business with the U.S. government, Opp'n App. at Ex. G, was not a "random," "fortuitous," or "attenuated" contact with Texas. *Burger King*, 471 U.S. at 475. It was the keystone of B&H's alleged scheme: the contractual predicate that enabled B&H

14

to conspire with Fluor to displace A2K–aligned TACs, to coerce those TACs into realigning with B&H against their will, and to capture the revenue and market position that rightfully belonged to A2K.

The cases B&H relies upon are inapposite. In *Holt Oil*, the defendant's "only contacts" with Texas relating to the instant controversy were entering into a contract with a Texas corporation, mailing a revised agreement and three checks from Oklahoma to Texas, and engaged in telephone and written communication while all material performance occurred in Oklahoma under Oklahoma law. 801 F.2d at 778. In *Freudensprung*, the contract was to be performed in West Africa and governed by English law while the defendant's contacts with Texas were limited to communications with a Texas resident ruing the contracting process. 379 F.3d at 344–45. Here, by contract, B&H contracted with a Texas–domiciled corporation and then affirmatively reached into Texas by directing false communications to Texas resident TACs, contacts that go far beyond the passive, arm's length transactions at issue in *Holt Oil* and *Freudensprung*. *See id.*

Moreover, unlike the nonresident defendants in *Holt Oil* and *Freudensprung*, B&H did not merely contract with a forum resident and then carry out its obligations elsewhere. Instead, B&H used its Fluor subcontract as a springboard for affirmative, Texas–based tortious conduct, reaching into Texas to contact A2K's Texas resident TACs with false and misleading information designed to coerce those TACs into leaving A2K. The Supreme Court has recognized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other state for the consequences of their activities. *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). That is precisely what B&H did here.

### 2.    B&H Directed Intentional Torts at Texas Residents

Independently of B&H's contract based contacts, B&H established minimum contacts with Texas by directing intentional torts at Texas residents. The Fifth Circuit has consistently held that "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *see also Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) ("When a nonresident defendant commits a tort within the state, or an act outside the state, that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state."). The Fifth Circuit has likewise recognized that specific jurisdiction exists "over an intentional–tort claim where a nonresident defendants placed a call to a forum and makes false statements over the phone to a forum resident." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 491 (5th Cir. 2018); *see also Defense Distributed v. Gewal*, 971 F.3d 485–96 (5th Cir. 2020) (holding that a letter delivered into Texas, which itself gave rise to the tort, constituted purposeful availment).

Importantly, the jurisdictional inquiry focuses on the relationship between the defendants and the forum state, not between the plaintiff and the forum. *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) ("[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). Although A2K is domiciled in Tennessee, this fact is irrelevant to the jurisdictional analysis because A2K does not rely on its own resident to establish jurisdiction. Rather, A2K relies on B&H's own deliberate, affirmative contacts with Texas where B&H contracted with Texas domiciled Fluor Enterprises, Inc., and then directed false and defamatory communications at Texas resident TACS. B&H's conduct thus stands in stark contrast to the situated condemned in *Walden*, where the defendant's only connection to the forum was plaintiff's resident and the defendant had taken no action directed to the forum itself. 571 U.S.

16

at 289–91. Here, B&H affirmatively reached into Texas to contact known Texas residents with false statements designed to interfere with their existing and prospective business relationships.

The Fifth Circuit's decision in *Central Freight Lines v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003), is instructive. In *Central Freight*, APA, a New Jersey freight carrier, contracted with CFL, a Texas based carrier. *Id*. at 379. When the business relationship soured, CFL alleged that APA committed intentional torts, including tortious interference with CFL's contractual relationship with Dell Computers, a Texas entity, by holding Dell's freight hostage and manipulating prices. *Id*. Although APA's tortious acts were carried out from New Jersey, the Fifth Circuit held that specific jurisdiction existed. The Court reasoned that "CFL has pled facts that are sufficient to show that APA committed intentional torts that were purposefully directed at APA's contractual business relationship with another Texas entity." *Id*. at 383–84. The Court further stated that it was "no 'mere fortuity' that CFL allegedly suffered injury in Texas" because Texas was "the primary location of CFL's business relationship" with the affected third party. *Id*. at 384.

B&H's conduct presents an even stronger case for specific jurisdiction than *Central Freight*. Like APA, B&H committed intentional torts purposefully directed at business relationships rooted in Texas. Specifically, the relationships between A2K and Fluor as well as the relationships between A2K and at least fourteen Texas–resident TACs. Unlike APA, whose tortious conduct was simply felt by a Texas based third party, B&H went further by sending false and defamatory communications directly to the Texas resident TACs themselves. ECF No. 1, Compl. ¶¶ 45, 49, 59, 67, 69 and Exs. 2, 4, 5. B&H invoked its contract with Fluor Enterprises, Inc. to lend its false statements the authority of a Texas–based prime contractor–telling TACs that "the head woman at Fluor" had reassigned them to B&H, and that "A2K is no longer part of this project (per Fluor)." *Id*. ¶¶ 45, 67 and Exs. 2, 5. As in *Central Freight*, it is no "mere fortuity" that

17

A2K suffered harm traceable to Texas: Texas is the domicile of the contracting counterparty (Fluor Enterprises) and the residence of the TACs whose contractual relationships B&H deliberately targeted. *See also Calder v. Jones*, 465 U.S. 783, 789–90 (1984) (holding defendants subject to jurisdiction where they "expressly aimed" intentional, tortious actions at the forum state and "knew that the brunt of th[e] injury would be felt" there); *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 400–02 (5th Cir. 2009) (applying Calder "effects" test and upholding jurisdiction where intentional conduct was directed at and harmed a "known, major creditor in Texas").

This case is also distinguishable from *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865 (5th Cir. 2001), where the Fifth Circuit found jurisdiction lacking over a tortious interference claim. In *Panda Brandywine*, the defendant's only connection to Texas was the "fortuity" that the plaintiffs resided there as the defendant had no other contacts with Texas and the contracts allegedly interfered with were "not governed by Texas law,…not to be performed in Texas, and [had] no relation to Texas other than the fortuity that [plaintiffs] reside there." *Id.* at 869–70. Here, in stark contrast, B&H's contacts with Texas are substantial and affirmative: B&H contracted with a Texas domiciled corporation, directed false communications into Texas to Texas resident TACs, and those TACs' Texas residences were not a "mere fortuity" but the very target of B&H's tortious scheme.

B&H purposefully reached into Texas and contacted Chris Smith, a Texas resident, solely to intentionally interfere with Smith's business relationship with A2K. Opp'n App. Ex. H (Wilson Decl.) ¶¶ 10–12; ECF No. 1, Compl. ¶ 45, Ex. 2. B&H disseminated false information that Smith could only work for B&H. B&H invoked its contract with Fluor Enterprises, Inc., stating "The head woman at Fluor put you on our team not [A2K's]….It's the head person that counts." *Id.* ¶ 45, Ex. 2. This interfered with Smith's ability to continue business relations with A2K. Smith

confirmed that he wanted to continue his business relationship with A2K, stating "[a]s [I] told you when we first talked that another company [A2K] had called me before you. I had already sent my resume to [A2K]. I'm confused." *Id.* Ex. 2. While Smith wanted to continue with his contractual business relationship with A2K, B&H would not allow that by insisting Smith had to work for B&H against Smith's will, invoking its relationship with Fluor in order to carry out the tortious interference. *Id.* ¶ 45, Ex. 2.

B&H also purposefully contacted Caleb Yaeger, a Texas resident TAC that had contracted with A2K to perform disaster work, Opp'n App. Ex. H (Wilson Decl.) ¶¶10–11, 13, and provided Yaeger with the false information that Yaeger could only work for B&H. ECF No. 1, Compl. ¶ 59, Ex. 4. Yaeger affirmatively stated that "I want to work but with [A2K]" and "I signed up to work for [A2K]. I have no clue how I ended up on [B&H's] deployment paperwork. Can you [A2K] get this straightened out with flour [sic] tomorrow?" *Id.* Ex. 4. Yaeger, the Texas resident, wanted to continue and perform under his contractual business relationship with A2K. *Id.* However, B&H's intentional reach into Texas to interfere with this relationship caused Yaeger to either work for B&H or not work at all rather than continue with the existing contract with A2K. *Id.*

### 3.    A2K's Claims Arise Out of or Relate to B&H's Texas Directed Contacts

The second prong of the specific jurisdiction analysis requires that the plaintiff's claims "arise out of or relate to" the defendant's forum contacts. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359 (2021); *Bristol–Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). This element is satisfied here.

Every claim A2K asserts against B&H arises directly from B&H's Texas directed contacts. A2K's Sherman Act § 1 and § 2 conspiracy claims (Counts I and II) are premised on B&H's conspiracy with Fluor—a conspiracy made possible only by B&H's deliberate decision to

19

subcontract with the Texas—domiciled Fluor Enterprises, Inc., and executed through B&H's dissemination of false statements to A2K's Texas resident TACs. ECF No. 1, Compl. ¶¶ 85–96. A2K's unjust enrichment claim (Count IV) is based on B&H's acquisition of the revenue and profits generated by TACs that B&H stole from A2K through false and defamatory communications directed at Texas resident TACs. *Id.* ¶¶ 102–12. A2K's tortious interference claims (Counts VI and VII) arise directly from B&H's communications with Texas resident TACs that induced them to leave A2K. *Id.* ¶¶ 126–51. A2K's civil conspiracy, defamation, business disparagement, and unfair competition claims (Counts X–XIII) likewise arise from B&H's false and defamatory statements directed at Texas residents about A2K's status as a Fluor subcontractor. *Id.* ¶¶ 170–96.

In conclusion, there is a direct nexus between B&H's Texas contacts—its subcontract with Texas domiciled Fluor Enterprises, Inc., and its false and defamatory communications directed at A2K's Texas–resident TACs—and each of A2K's claims against B&H. The "arise out of or relate to" requirement is amply satisfied.

### 4. Exercising Jurisdiction Over B&H Comports with Fair Play and Substantial Justice

Because A2K has established that B&H purposefully directed its activities at Texas and that A2K's claims arise out of those contacts, B&H bears the burden of presenting a "compelling case" that the exercise of jurisdiction would be unreasonable. *Burger King*, 471 U.S. at 477. "Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Enviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

20

In evaluating reasonableness, the Court considers: (1) the burden on the defendant; (2) the forum state's interests; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in efficient resolution; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Electrosource*, 176 F.3d at 874. Each factor here weighs in favor of exercising jurisdiction, or at minimum, does not weigh against it.

First, any burden on B&H of litigating in Texas is modest. B&H voluntarily reached into Texas to contract with Fluor Enterprises, Inc. and then affirmatively directed tortious communications at Texas residents. A defendant who has purposefully derived commercial benefit from its interstate activities may not defeat jurisdiction simply because of inconvenience. *Burger King*, 471 U.S. at 473–74; *see also Enviro Petroleum*, 79 F. Supp. 2d at 725 ("because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity").

Second, Texas has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out–of–state actors. *Burger King*, 471 U.S. at 473; *see also McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). Texas has a "substantial interest in the litigation of claims against foreign defendants who allegedly committed intentional and tortious acts directed at Texas." *Guidry*, 188 F.3d at 631. Third, A2K has a strong interest in obtaining convenient and effective relief in this forum where its principal witnesses reside and where much of the relevant evidence is located. Fourth, adjudicating A2K's claims against B&H in the same forum as A2K's claims against codefendant Fluor Federal Services, Inc.—which does not contest jurisdiction—serves the interstate judicial system's interest in efficient resolution. Finally, the

21

shared interest of several states in furthering fundamental substantive social policies, including the Sherman Act's prohibition on anticompetitive conspiracies and the states' interest in protecting businesses from tortious interference, weighs in favor of jurisdiction.

B&H has not identified, and cannot identify, any consideration that would render the exercise of jurisdiction unreasonable. Any inconvenience B&H may experience from litigating in Texas is a direct result of its own intentional, tortious conduct, directing false communications and tortious actions toward Texas. B&H cannot be heard to complain of being called to account in Texas for injuries it deliberately inflicted there.

**B.    General Jurisdiction Exists Due to B&H's Continuous and System Contacts with Texas**

Even if the Court were to determine that specific jurisdiction is lacking, and it should not, B&H is also subject to this Court's general jurisdiction. The Supreme Court held that a defendant is subject to general jurisdiction when the defendant's "'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman,* 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). While a corporation's place of incorporation and principal place of business are the "paradigm" forums for general jurisdiction, the Supreme Court has expressly left open "the possibility that in an exceptional case" a corporation might also be deemed "at home" elsewhere. *Id.* at 139 n.19; *see also Perkins v. Budget Consolidated Mining Co.*, 342 U.S. 437, (1952) (exercising general jurisdiction where the defendant carried on "a continuous and systematic, but limited, part of its general business" within the forum state). As Justice Sotomayor emphasized in *Daimler*, the *Perkins* Court found general jurisdiction proper even though the defendant's Ohio contacts represented only a limited part of its overall business; what mattered

22

was that the defendant was physically carrying on its business within the forum. *Daimler*, 571 U.S. at 150–51 (Sotomayor, J., concurring in judgment)

This is an exceptional case. B&H has provided continuous and systematic disaster relief services *within* the borders of Texas for at least eighteen years. Since 2016, B&H has accepted no fewer than four subcontracts to perform federal disaster relief work within the borders of Texas. Opp'n App. Exs. A-D (B&H Subcontracts). B&H's commitment to Texas stretches back even further as it prides itself on its work performed within Texas dating back to 2008. *Id.* at Ex. F (B&H Texas Work). B&H's publicly accessible website touts five "Project Highlights" for past work performed by B&H, and three of these highlights describe Federal disaster recovery work performed by B&H physically in Texas, including work in the Lower Rio Grande Valley as part of Hurricane Dolly recovery and work in Galveston County and southeast Texas as part of the States recovery from Hurricane Ike. *Id.*

The Fifth Circuit's reasoning in *Frank v. PNK (Lake Charles)*, 947 F.3d 331 (5th Cir. 2020) is applicable here. The Fifth Circuit found it dispositive that the nonresident defendant in *Frank* "did not have a physical presence in Texas." *Id.* at 339. B&H, by contrast, has repeatedly deployed personnel to perform disaster recovery work physically within Texas over a period of eighteen years, accepted at least four federal subcontracts for work performed in Texas since 2016, and actively encourages its affiliates to become licensed in Texas. Opp'n App. Exs. A-F. Unlike the nonresident defendant in *Frank*, whose contacts with Texas were limited to marketing directed at Texas residents from across the border, B&H's contacts involve the sustained, physical performance of professional services within the state.

23

B&H's eighteen years of continuous, in–state disaster recovery work render it "essentially at home" in Texas within the meaning of *Daimler* and *Perkins*, and the Court should exercise general jurisdiction accordingly

**C.      In the Alternative, A2K Requests Limited Jurisdictional Discovery to Establish Personal Jurisdiction.**

In the alternative, should the Court find that A2K has not yet established a prima facie case of personal jurisdiction, A2K respectfully requests an opportunity to conduct limited jurisdictional discovery. "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts…the plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).

Here, A2K established that B&H reached into Texas to enter a potentially long term and lucrative contract with a Texas corporation. Appx. 3; Opp'n App. Ex. G (SAM.gov Reg.). Using this contract, B&H reached into Texas *multiple times* to interfere with existing and prospective contractual relationships between A2K and at least fourteen Texas residents as part of its conspiracy to exclude A2K from the East Zone Disaster Relief Work Market. *See supra* V(A)(2) at 15. B&H has performed disaster recovery work within the borders of Texas for at least the past eighteen years and encourages its affiliates to register as licensed insurance adjusters in Texas. *See supra* V(B) at 22. Based on these facts, it is likely that B&H has additional contacts with Texas that would permit this Court to exercise personal jurisdiction over B&H. *See Blessey Marine Services, Inc. v. Jeffboat, LLC*, No. 10–1863, 2011 WL 651999, at *6 (E.D. La. Feb. 10, 2011) (finding that the defendant's alleged engagement in various business activities in the forum over the course of a 20 year period "'suggest with reasonable particularity the possible existence' of

other facts that would render general jurisdiction appropriate" and thus permit limited jurisdictional discovery) (quoting *Fielding*, 415 F.3d at 429).

**D.    If This Court Finds Insufficient Evidence to Exercise Personal Jurisdiction Over B&H, It Should Transfer Rather Than Dismiss This Lawsuit**

Finally, should the Court determine that it lacks personal jurisdiction over B&H, A2K respectfully requests that the Court transfer the action rather than dismiss it. Where a court finds it lacks personal jurisdiction, it is authorized under 28 U.S.C. § 1406(a) to transfer the action to "any district or division in which it could have been brought" if the court finds that it is "in the interest of justice" to transfer the action. *Herman v. Cataphora, Inc.* 730 F.3d 460, 466 (5th Cir. 2013) (citing *Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967)).

A2K alleged sufficient facts in its Complaint to demonstrate a conspiracy between B&H and Fluor Federal Services to exclude A2K from the East Zone Disaster Relief Work Market as well as numerous intentional torts. *See generally* ECF No. 1, Compl. Despite the inefficiencies of litigating this matter in two separate venues, it is in the interest of justice to allow A2K to pursue all available remedies for damages sustained.

## VI.    CONCLUSION

For all the foregoing reasons, the Court should deny B&H's Motion to Dismiss.

May 4, 2026.                                    Respectfully submitted,

                                               **BAKER DONELSON BEARMAN
                                               CALDWELL & BERKOWITZ, PC**

                        By:    *Ferdose al-Taie*
                               **FERDOSE AL–TAIE** (TX Bar #24106644)
                               5956 Sherry Lane, 20th Floor
                               Dallas, TX  75225
                               (214) 301–7210 faltaie@bakerdonelson.com

25

**BENJAMIN W. JANKE** (LA Bar #31796)
*(Admitted pro hac vice)*
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
(504) 566–5200 bjanke@bakerdonelson.com

**BETHANY CARROLL** (GA Bar #406997)
*(Pro hac vice forthcoming)*
3414 Peachtree Rd NE, Ste. 1500
Atlanta, GA 30326
(404) 223-2209 bcarroll@bakerdonelson.com

**CHRIS BOMHOFF** (FL Bar #1059470)
*(Admitted pro hac vice)*
200 East Broward Blvd.**,** Suite 2000
Ft. Lauderdale, FL 33301
(954) 768–1630 cbomhoff@bakerdonelson.com

**ATTORNEYS FOR A2K, INC.**

26

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of May, 2026, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's CM/ECF system, which served the foregoing on the following counsel of record:

**Vinson & Elkins L.L.P.**

Jason M. Powers
Texas Bar No. 24007867
jpowers@velaw.com
Kyle Irlbeck
Texas Bar No. 24143040
kirlbeck@velaw.com
845 Texas Ave., Suite 4700
Houston, TX 77002
Phone: (713) 758-2522
Fax: (713) 615-5809

Adam Hudes (*Admitted Pro Hac Vice*)
ahudes@velaw.com
Marisa Poncia (*Admitted Pro Hac Vice*)
rponcia@velaw.com
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Phone: (202) 639-6632

Nicole Castle (*Admitted Pro Hac Vice*)
ncastle@velaw.com
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Phone: (212) 237-0096

***Attorneys for Defendant Fluor Corporation***

**Touchstone, Bernays, Johnston, Beall, Smith & Stollenwerck, L.L.P.**

Marcus Tolliver-SBN: 24079646
Amie Fordan-SBN: 24036580
Kristen M. Azzolini-SBN: 24092853
901 Main Street, Suite 6200
Dallas, Texas 75202
Phone: (214) 741-1166
Fax: (214) 741-7548
marc.tolliver@tbjbs.com
amie.fordan@tbjbs.com
kristen.azzolini@tbjbs.com

***Attorneys for Defendant B&H Claims Service, Inc.***

_/s/ Ferdose al-Taie_
Ferdose al-Taie

27